Harry Mavin COSTA, Jr., Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–417.

Court of Criminal Appeals of Oklahoma.

April 8, 1988.

As Corrected April 28, 1988.

Gloyd McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Harry Mavin Costa, Jr., was charged, tried, and convicted in the District Court of McIntosh County for the crime of First Degree Murder, in Case No. CRF–85–80, and was sentenced to life imprisonment. From this judgment and sentence, he appeals.

On August 21, 1985, at approximately 10:00 p.m., the appellant and two of his friends, Tracy Swing and Marlene DeLong stopped at a Seven–Eleven convenience store in Eufaula, Oklahoma to purchase food and beer. Several witnesses testified that after purchasing their items, the appellant and Swing made derogatory racial comments to Charles Murrell and James Hardy in the parking lot of the convenience store. The appellant then tried to pick a fight with Hardy, the larger of the two black men, but Hardy ignored him and walked into the store. The appellant next grabbed a chain saw from the back of his truck, and after being unable to start it, placed it back in the truck and obtained a long, single-edged knife from the inside of the truck. During this time, Murrell was talking with the victim, Mike Dye, who was sitting in his car in the parking lot. The appellant approached Murrell, who ran from the scene when the appellant tried to pick a fight with him by slashing at him with the knife. Dye got out of his truck and walked over to the ice machine as the appellant approached him with the knife. Witnesses to the slaying further testified that Dye had no weapon and did not want to fight. The appellant made a slashing motion at Dye's wrist and ultimately thrust the knife into Dye's upper torso. The appellant ran back to the pickup in which Swing and DeLong were waiting and said, "Lets get the hell out of here!" As the three left, several of the witnesses, observed that Dye, had been stabbed and one of the witness called the police.

Sergeant Robert Frost of the Eufaula Police Department was dispatched to the scene at about 10:30 p.m. and observed Dye lying face down on the curb line next to the ice machine. Unable to locate Dye's pulse, Frost obtained a description of the vehicle and suspects from the witnesses and relayed the information to police dispatch. Later that evening, Oklahoma Highway Patrolman Kenneth Bailes investigated a single car accident involving a blue pickup on Highway 71 near Eufaula. Bailes observed that Swing, the driver, had been killed, while DeLong and the appellant sustained severe injuries, including broken legs. Bailes estimated that the accident occurred at about 10:30 p.m. and that the truck had been traveling over 80 miles per hour. Bailes also observed Deputy Buck Coles remove two knives from the truck, the longer knife from underneath the appellant, as well as a chain saw from the back of the truck. Dr. M.F. Merchant, a forensic pathologist for the State Medical Examiner, performed the autopsy on Dye and testified that Dye was cut on the wrist probably as a result of defensive measures and that his death was caused by the cut wrist as well as a stab wound in the chest which pierced the heart. He further testified that the victim's wounds were caused by a long single-edged knife.

■ In his first assignment of error, the appellant contends that he was denied a fair trial when the trial court erred in excluding the testimony of Marlene DeLong concerning the hearsay statement of Tracy Swing. An offer of proof by defense counsel revealed that if allowed to testify, DeLong would relate statements made by Swing in which he allegedly claimed to have stabbed Mike Dye. He also alleges that the trial court improperly excluded testimony of Swing getting into the truck after the stabbing, handing DeLong a knife, and telling her to wipe it off. Because of the unavailability of Swing due to his untimely death, his alleged statements were against his penal interest. *See* 12 O.S.1981, § 2804(B)(3). However, it is a well established rule that "A statement tending to expose the declarant to criminal liability and offered to exculpate the ac-

cused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

In the instant case, the only persons to hear Swing allegedly admit to Dye's murder were DeLong and the appellant, who were long time acquaintances and traveling companions. No evidence was presented supporting the alleged statements made by Swing that he, not the appellant, murdered Dye. Furthermore, DeLong testified that Swing handed her a double-edged knife. This was in direct conflict with the autopsy report which revealed that Dye was killed with a single-edged knife. In light of these events and the numerous witnesses who identified the appellant as the perpetrator of the crime, we find that the trial court properly excluded DeLong's testimony due to the lack of corroboration which would indicate the trustworthiness of the alleged statements. This assignment is without merit.

▉ Secondly, the appellant claims that due to the amount of publicity before trial, his motion for a change of venue should have been granted. At the outset, we note that a change of venue will be granted only when there is clear and convincing evidence that a fair trial is a virtual impossibility. *Thomsen v. State*, 582 P.2d 829 (Okl.Cr. 1978). An extensive voir dire proceeding revealed that although some members of the empaneled jury were acquainted with a few of the witnesses, none of them knew the appellant and all expressed that they could decide the case strictly upon the evidence presented in an unbiased manner. The appellant has failed to establish how the alleged fixed opinions of guilt among the jurors denied him a fair trial. Moreover, because this is an issue within the sound discretion of the trial court, we will not disturb the lower court's ruling where there has been no abuse of that discretion. *Frye v. State*, 606 P.2d 599 (Okl.Cr.1980). This assignment is without merit.

▉ Next the appellant contends that his sentence of life "without parole" should be modified. The record indicates that the trial judge sentenced the appellant to life "without parole". Regardless of whether this was an attempt to exceed the bounds of authority or the result of a clerical error, the fact remains that under Oklahoma law at the time of the commission of the crime, there was no such sentence for First Degree Murder. The appellant's sentence of life imprisonment is well within the range provided by law and the "without parole" portion of the sentence should be stricken to properly reflect the jury's verdict. 21 O.S.1981, § 701.9(A). The judgment is affirmed and the appellant's sentence is remanded to the district court to correct the judgment and sentence. This assignment is meritless.

Finally, the appellant complains that should this Court remand his case for new trial, the State should not be able to seek the death penalty during retrial. However, finding no error warranting reversal of appellant's conviction, this issue is moot.

The judgment is AFFIRMED, but this matter is REMANDED for the trial court to correct the sentence to properly reflect the verdict of the jury.

BRETT, P.J., and PARKS, J., concur.